UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **00-6124 CR-ZLOCH**

18 USC 371
18 USC 1014
18 USC 1341
18 USC 1343
18 USC 1344

**MAGISTRATE JUDGE SELTZER**

UNITED STATES OF AMERICA,

    **Plaintiff,**

v.

MARCUS "MARC" GORDIEN

    **Defendant.**



### INFORMATION

The United States Attorney charges that:

### COUNT I

### CONSPIRACY TO COMMIT BANK FRAUD, MAIL FRAUD. AND WIRE FRAUD

1. From in or about January 1995, and continuing until in or about April 1996, the exact dates being unknown, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

MARCUS "MARC" GORDIEN,

did knowingly and willfully combine, conspire, confederate, and agree with persons known and unknown to commit the following offenses against the United States:



    (a) bank fraud, in violation of Title 18, United States Code, Section 1344;

    (b) filing false loan applications with financial institutions, in violation of Title 18 United States Code, Section 1014;

    (c) mail fraud, in violation of Title 18, United States Code, Section 1341, and

    (d) wire fraud, in violation of Title 18, United States Code, Section 1343.

### BACKGROUND

At all times material to this information:

2. Barnett Bank (now known as Bank of America) (hereinafter "the Bank") is a nationally chartered bank whose deposits are insured by the Federal Deposit Insurance Corporation.

3. First Bankers Mortgage Services, Mortgage Dynamics, CFI Mortgage Corporation and Advantage Financial are mortgage brokers (hereafter referred to as the Mortgage Brokers). The Mortgage Brokers are in the business of finding lenders for persons who need a loan to purchase real estate. During the course of funding the loans for the buyers the Mortgage Brokers would send documents and other items to the lender and receive documents and other items from the lender, including funds for closing, by facsimile, wire transfer, and commercial interstate carrier.

### Object of the Conspiracy

4. It was the object of the conspiracy that the defendant and his coconspirators would submit and cause to be submitted false information and false documentation to the Bank and the Mortgage Brokers in order to induce the Bank and the Mortgage Brokers and their lenders to loan money to persons who could not otherwise qualify for a loan, in order that the defendant and his coconspirators could profit through the sale of real property.

### Manner and Means of the Conspiracy

5. It was part of the conspiracy that defendant and his coconspirators would and did obtain and finance the purchase of residential real estate.

6. It was further part of the conspiracy that after the properties were purchased by the defendant and his coconspirators they would spend some money improving the homes, and then sell the homes for approximately double the price to unsophisticated buyers.

7. It was further part of the conspiracy that the buyers would not have sufficient income or assets or would have too many liabilities to qualify for a loan or to pay the down payment and closing costs to purchase the property.

8. It was further part of the conspiracy that the defendant would and did complete or caused to be completed loan applications for the buyers at the Bank and Mortgage Brokers, which loan applications contained false information.

9. It was further part of the conspiracy that the defendant would and did submit or caused to be submitted with the loan application to the Bank and Mortgage Brokers false documents in order to qualify each of the buyers for their loan.

10. It was further part of the conspiracy that, if the income of a buyer was insufficient to qualify for a loan, the defendant would and did prepare or caused to be prepared false W-2's and pay stubs which were then submitted to the Bank and Mortgage Brokers on behalf of the buyer.

11. It was further part of the conspiracy that, if the income of a buyer was insufficient to qualify for a loan, the defendant caused to be prepared Form 1040's which falsely stated the annual

income of the buyer and which were submitted to the Bank and Mortgage Brokers on behalf of the buyer.

12. It was further part of the conspiracy that, if the assets of a buyer were insufficient to reflect the ability to make a down payment on a loan, then the defendant would and did create or caused to be created a "gift letter," which falsely represented that the down payment had been gifted to the buyer by a relative, and would then submit the fraudulent "gift letter" to the Bank and Mortgage Brokers on behalf of the buyer.

13. It was further part of the conspiracy that the defendant would and did create bank statements or alter existing bank statements which would show balances for the buyer or a person gifting the down payment to the buyer, either greatly over-representing the true balance in the account or a substantial balance in a bank where the person had no account, and would then submit the fraudulent bank statements to the Bank and Mortgage Brokers.

14. It was further part of the conspiracy that, if the buyer had little or no credit history, the defendant would and did create or caused to be created credit reference letters from Bell South, Florida Power and Light and other businesses falsely stating that the buyer had an excellent credit history, and would then submit or caused to be submitted the credit reference letters to the Bank and Mortgage Brokers on behalf of the buyer.

15. It was further part of the conspiracy that the defendant would and did submit or caused to be submitted to the Bank and Mortgage Brokers fraudulent letters created to fill in the gaps in employment and other questions the Bank and Mortgage Brokers may have on the loan application.

16.  It was further part of the conspiracy that in order to prevent the Bank and Mortgage Brokers from uncovering the false information, such as the false Form W-2's, false bank statements, and false rental information, the defendant would and did include names, telephone numbers and addresses in the loan applications submitted to the Bank and Mortgage Brokers of persons who would, at the direction of the defendant and his coconspirators, provide false verifications as to the employment, bank deposits or rental information of the buyers to the Bank and Mortgage Brokers.

17.  It was further part of the conspiracy that the defendant and other coconspirators would and did conspire with loan officers and loan processors in order that the written verification of employment forms and verification of deposit forms would be given directly to the defendant or his coconspirators instead of being mailed directly to the employers or the banks, which forms would then be falsely completed and sent back to the Bank and Mortgage Brokers.

18.  It was further part of the conspiracy that the defendant would and did falsely represent to the Bank and the Mortgage Brokers that the closing costs came from the buyer when as he well knew the closing costs were paid or caused to be paid by himself and or his coconspirators.

## OVERT ACTS

19.  In furtherance of the conspiracy and to effect the objects thereof, at least one of the following overt acts, among others, was carried out by at least one co-conspirator in the Southern District of Florida, and elsewhere:

A.  On or about January 4, 1995, defendant caused to be submitted a loan application to First Bankers Mortgage Services. The loan application included Form W-2's, which falsely

reflected that Keith White earned income from Corporate Securities Group of $29,989.00 for 1992 and $32,240 for 1993.

B. On or about February 7, 1995, defendant caused Corestates Bank, N.A., to send a wire transfer from Pennsylvania in the amount of $75,000 funding the loan for Keith White.

C. On or about June 21, 1995, defendant caused to be submitted a loan application with Form W-2's for one of the buyers to Barnett Bank. The Form W-2's falsely reflected that Sharon Brown was employed by Lov on DeCollage and earned income of $15,188.90 and $14,768.62, for years 1994 and 1993, respectively.

D. On or about June 9, 1995, defendant caused to be submitted to Barnett Bank for one of the buyers a fraudulent credit reference letter purporting to be written by FP&L.

E. On or about November 28, 1995, defendant caused to be submitted a loan application to Mortgage Dynamics. The loan application falsely reflected that Gilberto Gonzalez had $10,000 in his account at NationsBank.

F. On or about October 30, 1995, defendant caused to be submitted to Mortgage Dynamics for one of the buyers a fraudulent credit reference letter purporting to be written by FP&L.

G. On or about December 10, 1995, defendant caused First Security Savings Bank to send a facsimile from Georgia notifying Mortgage Dynamics of an interest rate quote on the loan for Gilberto Gonzalez.

H. On or about January 31, 1996, defendant caused to be submitted a loan application to CFI Mortgage Corporation. The loan application falsely reflected that Carmelle Alce had $7,300 in her account at Great Western Bank.

      I.    On or about February 20, 1996, defendant caused a cashier's check in the amount of $73,006.25 to be sent by commercial interstate carrier from First State Bank-Calvert Branch, Calvert, Texas.

All in violation of Title 18, United States Code, Section 371.

_____
THOMAS E. SCOTT
UNITED STATES ATTORNEY

_____
JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY

-7-

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA            CASE NO. _____

v.                                  **CERTIFICATE OF TRIAL ATTORNEY***

MARCUS GORDIEN                      **Superseding Case Information**:

**Court Division**: (Select One)    New Defendant(s)    Yes ___  No ___
                                    Number of New Defendants  ___
___ Miami   ___ Key West            Total number of counts    ___
_X_ FTL     ___ WPB  ___ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:   (Yes or No) __No__
   List language and/or dialect   __English__

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                    (Check only one)

   | | | | | | |
   |---|---|---|---|---|---|
   | I | 0 to 5 days | _X_ | Petty | | ___ |
   | II | 6 to 10 days | ___ | Minor | | ___ |
   | III | 11 to 20 days | ___ | Misdem. | | ___ |
   | IV | 21 to 60 days | ___ | Felony | | _X_ |
   | V | 61 days and over | ___ | | | |

6. Has this case been previously filed in this District Court? (Yes or No) __No__
   If yes:
   Judge: _____    Case No. _____
   (Attach copy of dispositive order)

   Has a complaint been filed in this matter?  (Yes or No) __No__
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers:  __99-4657-SNOW; 97-4601-SNOW; and 97-4609-SNOW__
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____  District of _____

   Is this a potential death penalty case? (Yes or No) ___NO___

7. Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? _X_ Yes __ No   If yes, was it pending in the Central Region? _X_ Yes __ No

   _____
   JEFFREY N. KAPLAN
   ASSISTANT UNITED STATES ATTORNEY
   Court Bar No. A5500030

*Penalty Sheet(s) attached                                          REV.4/7/99
N:\udd\hpantale\kaplan\gordien\INfPKG2.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:  __MARCUS GORDIEN__    No : _____

Count #1:
Conspiracy to commit bank fraud, mail fraud and wire fraud, all in violation of 18:371

*Max Penalty:   5 years' maximum imprisonment, $250,000 fine

Count # :

*Max Penalty:

Count #:

*Max Penalty:

Count # :

*Max Penalty:

Count # :

*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

REV 12/12/96