## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 00-6124-CR-ZLOCH

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | |
| MARCUS "MARC" GORDIEN, | : | |
| Defendant. | : | |



### DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW the Defendant, MARCUS GORDIEN, by and through his undersigned counsel, who files this Sentencing Memorandum in order to aid the Court in its determination of an appropriate sentence in this matter and in doing so, states as follows:

### I. INTRODUCTION

Marcus Gordien was sentenced by this Court on October 27, 2000 to twenty-four months incarceration pursuant to the sentencing guidelines. Marcus Gordien stands before this Court for resentencing consideration pursuant to the Government's petition to reduce Gordien's sentence based upon his substantial assistance pursuant to Rule 35 of the Federal Rules of Criminal Procedure. The presentence investigation report accurately describes Marcus as a good man who made a serious mistake – a first offender who comes from a stable family background, enjoys a loving relationship with his family and has a strong work ethic. Although the presentence investigation report accurately and fairly captures Marcus' background, some elaboration may serve to explain how

someone like Marcus Gordien came to be a defendant facing sentencing for a federal criminal violation.

Fortune Gordien, Marcus' father, was a member of the American Olympic Teams in 1948, 1952 and 1956. Fortune Gordien held the world's record in the discus throw for ten years, breaking it and rebreaking it several times from 1949 to 1959. Fortune Gordien broke other track and field world records including the one thousand-meter relay, which he and his team broke in Oslo, Norway in 1947. Fortune Gordien was named to the National All American Team six times, elected by the Intercollegiate Conference Athletic Association to the All Big-Ten Track and Field Team of the Half Century and along with Bronko Nagurski and Bud Wilkinson, was honored as one of the greatest athletes in the history of the State of Minnesota.

After graduating high school, Marcus labored for fourteen years in the shadow of his father to excel in amateur track and field.[1] Although Marcus never achieved the level of success and recognition that his father enjoyed, through hard work and determination he competed internationally in the sport that he loved. Like his father, Marcus took no short cuts and his achievements were earned by dedication and drive.

When Marcus Gordien retired from amateur track and field competition, he entered the business world as a real estate broker. His wife Linda, who herself had excelled as a pentathlete, had well in advance of Marcus, began climbing the ladder of success in the business world. When his wife, Linda was rapidly rising to her current position as Director of Sales for North America for Nexell Therapeutics, Inc., Marcus was striking out on his own in the unfamiliar field of real estate. Out of his element and wanting desperately to succeed like his wife, he met codefendant Kudron and Roseman

---

[1] See also a letter written on behalf of Marcus Gordien by his friend, Attorney C. Lane Borg which is attached hereto and incorporated herein.

2

and unlike his amateur athletic experiences, Marcus took his first short cut. Marcus Gordien never set out to commit a crime, but when he naively began doing what he saw everyone else doing, he knowingly put at risk his family's good name, his record of honorable athletic pursuit and most importantly, the emotional and financial well being of his young family.

Since Marcus' wife travels extensively in her health care management position, Marcus has been the primary care giver of their three children, ages 13, 9 and 1. When Marcus took his first short cuts trying to succeed in the business world as his wife had been doing for the years Marcus had spent chasing his track and field dreams, he never imagined that these short cuts would subject him to the potential loss of liberty and subject his three children to the loss of their primary care giver. Nevertheless, Marcus Gordien will be punished, and the question remains based upon the Government's petition for sentence reduction, what sentence is most appropriate in this case.

## II. SENTENCING OPTIONS

The Government has petitioned this Court to reduce Marcus Gordien's sentence based upon his substantial assistance pursuant to Rule 35 of the Federal Rules of Criminal Procedure. Marcus gave extensive debriefings to the Government, several times traveled from California to assist the Government and was prepared to testify in the trial of the major codefendant (Roseman). It is believed that the Government will concede that Marcus' agreement to testify contributed greatly to the avoidance of a protracted trial and the entry of a guilty plea by Roseman.

In consideration of Marcus Gordien's background, his less than major role in the charged conspiracy, and his substantial assistance to the Government, undersigned counsel urges the Court not to incarcerate Marcus Gordien and instead to impose a

3

sentence of probation or home confinement. If, however, in the exercise of its discretion, the Court determines that these facts support the incarceration of Marcus Gordien, undersigned counsel urges the Court to at most, impose either a split sentence or a sentence of no more than a year and a day with the recommendation that it be served in a Community Corrections Center (CCC).

Under Federal Bureau of Prisons' policy, an inmate may be designated by the Bureau of Prisons to serve a "short-term sentence" (up to a year and in some instances, as much as a year and a day) in a Community Corrections Center in lieu of a federal prison camp or other facility.    18 USC Section 3621(b); Bureau of Prisons Program Statement 7300-09; 7300-10.

Bureau of Prisons Program Statement 7300-09 provides in relevant part:

Federal judges may recommend that CCC's be designated for inmates to serve short-term sentences (ordinarily less than one year). CCM's shall carry out such a recommendation if they determine that this designation is appropriate. CCM's shall consult with MCA's in all situations of designation of community based facilities for periods exceeding one year. If this space is not available or if inmates are inappropriate for designation of CCC's an appropriate designation shall be made.

Bureau of Prisons Program Statement 5100.07 effective November 1999 requires a judicial recommendation to allow the Bureau to exercise its discretion in designating a CCC for the service of a sentence. Under the policy, a Federal Judge may recommend in the Judgment and Commitment Order that a CCC be indicated for the service of the Defendant's sentence. Undersigned counsel has been told that the Bureau of Prisons welcomes judicial recommendations and if at all possible will endeavor to honor the request  As noted above, however, a recommendation is a prerequisite to the

4

Bureau of Prisons exercising its discretion in designating a CCC for service of a sentence.[2]

Lastly, on a personal note, undersigned counsel has come to know Marcus Gordien as a gentle, sincere man who is a devoted and loving son, father, and husband who does all in his power to care for his young family. Undersigned counsel implores this Court to be merciful when resentencing this good and decent man.

Respectfully submitted,

DAVID G. VINIKOOR, P.A.
Attorney for Defendant
420 S.E. 12th Street
Fort Lauderdale, FL 33316
Telephone: (954) 522-2500
Facsimile: (954) 522-7278

By: _____
DAVID G. VINIKOOR
FL BAR #195719

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail delivery this 14th day of February, 2001, to: Assistant U.S. Attorney Jeffrey Kaplan, 500 East Broward Boulevard, Suite 700, Fort Lauderdale, FL 33394 and to Frank E. Smith, U.S. Probation Officer, 299 E. Broward Blvd., Room 409, Fort Lauderdale, FL 33301, and to Carol Sirotto, U.S. Pretrial Services, 299 E. Broward Blvd., Room 301, Fort Lauderdale, FL 33301.

_____
DAVID G. VINIKOOR

---

[2] While a judicial recommendation is not a prerequisite to a designation to a particular federal prison camp or other facility, e.g., FPC Eglin, a judicial recommendation of a CCC is required by the Bureau of Prisons before it will consider such a designation.

ATTORNEYS AT LAW

LANE BORG
INDIA L STROM
MICHAEL A GREENLICK

September 20, 2000

Hon. William J. Zloch
U.S. District Court
Federal Courthouse
299 East Brouard Blvd.
Fort Lauderdale, Fl. 33301

Dear Judge Zloch,

I am an attorney who has practiced law in Portland, Oregon for 16 years. My
practice includes both criminal defense and civil litigation. I also have served as a
judge *pro tempore* for the State Courts. Additionally, I am currently an Adjunct
Professor at the Northwestern School of Law at Lewis & Clark College.

However, I am not writing to you in my professional capacity. Rather, I am
writing to tell you about my friend Marcus Gordien.

I got to know Marcus in the late 1970s, while I was a student and athlete at
Pomona College in Claremont California. Marcus lived in Claremont, and
although he was not a student at Pomona, he was coached by my track coach, Pat
Mulcahy.

During my time at Pomona I had weekly contact with Marcus for over three years.
Since college our careers, mine in the law and his in athletics, have taken us to
different parts of the country and therefore by necessity our contact has lessened,
but I have had occasion to see Marcus when i have gone back to Claremont and I
have kept up with him through mutual friends.

Marcus is one of three sons of Fortune Gordien. Fortune held the world record in
the discus throw during the 1950s. Marcus, his twin brother, Mitch, and his
younger brother, Kelly, followed their father into track and field. Mitch was a
successful decathlete and Kelly was a successful high jumper. Marcus was a
discus thrower and shot putter.

Although by any objective measure Fortune had three great athletes for sons who
all competed at an international standard, Marcus happened to compete at a time
when the best discus throwers were Americans. Marcus, being in his father's
event, carried his father's legacy, and I believe this put a unique burden on his
athletic career.

September 20, 2000
Hon. William J. Zloch
page 2

I want to relate one story to emphasize this point. In the 1980 Pepsi Invitational, Marcus was competing for UCLA. Also competing that day, in a comeback effort, was Al Orter. Although Fortune held the world record, a failing of his was that he never beat Orter in the Olympics. I watched as Marcus stepped into the ring and the commentator announced over the loud speaker that here was Marcus, son of Fortune, competing against Al Orter, whom Fortune had never beaten in the Olympics.

I recall that Marcus fouled each attempt that day. If any of the throws were fair, he was certainly off his peak performance. Marcus had great days of throwing success in his time, but experiences like what occurred the Pepsi Invitational were not uncommon for him. Marcus had to live in his father's shadow in a way that his brothers did not.

Marcus continued into the 1980s trying to pursue a level of athletic success that eluded him. That is not to say he was not talented, but he did not succeed as his father had. I think it is this reason that kept him pursuing his track career longer than his peers. His wife Linda, who was herself a very talented pentathlete, finished with track earlier than Marcus and moved on to a successful business career. By the time Marcus left track as a full time vocation, he was again trying to live up to an image of success as a husband, father and provider, but he was having to play catch-up.

Academics were not an emphasis in Marcus' life. I have not read any of the reports in this case, but it would not surprise me if, at least initially, Marcus was talked into this by someone else.

In my experience with Marcus, I never found him to be cruel to any person, especially someone in a weaker position than himself. When I was a young track athlete at Pomona College, it would have been easy for Marcus to dismiss me or my fellow teammates as being below his stature, but he did not. I always felt welcome with him. I saw him extend that same openness with other students, whether on the track or working out in the gym. He was genuine, accessible and supportive of other people's efforts.

September 20. 2000
Hon. William J. Zloch
page 3


I know from personal experience that sentencing someone to jail is never taken
lightly even in the clearest cases, but the point of my letter is to try to tell you who
Marcus was and what I hope he will be again.

Thank you for your consideration.

                        Sincerely,

                        BORG STROM & GREENLICK

                        C. Lane Borg
                        Attorney at Law


CLB/vrg